UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER L.,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:23-CV-01157 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Christopher L. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 4; Dkt. 6). For the reasons discussed below, the Commissioner's motion (Dkt. 6) is granted and Plaintiff's motion (Dkt. 4) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on January 6, 2021. (Dkt. 3 at 23, 73, 84).[1] In his applications, Plaintiff alleged disability beginning October 31, 2020. (*Id.* at 23, 75, 86). Plaintiff's applications were initially denied on July 1, 2021, and on reconsideration on September 14, 2021. (*Id.* at 23, 134-53, 155-66). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Alexander Borré on October 25, 2022. (*Id.* at 40-72). On November 2, 2022, the ALJ issued an unfavorable decision. (*Id.* at 20-39). Plaintiff requested Appeals Council review; his request was denied on September 7, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff meets the insured status requirements of the Act through December 31, 2025. (Dkt. 3 at 25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 31, 2020, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder, posttraumatic stress disorder, anxiety disorder, [and] intermittent explosive disorder." (*Id.* at 26). The ALJ also found that Plaintiff suffered from the nonsevere impairments of diabetes, hypertension, asthma, and obesity. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 20). In particular, the ALJ considered the requirements of Listings 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> [Plaintiff] can understand, remember and carry out simple instructions; occasionally interact with the public, coworkers and supervisors; and tolerate occasional simple changes in the workplace.

(*Id.* at 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 31).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the

representative occupations of laundry laborer and dishwasher. (*Id.* at 32-33). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 33).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative remand the matter for further administrative proceedings, arguing that the ALJ improperly rejected the opinion of licensed master social worker[2] ("LMSW") Christina King. (Dkt. 4-1 at 1). The Court is not persuaded by this argument, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In making the RFC finding, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other

---

[2] Christina King is sometimes referred to as an LMSW in the record and sometimes as a nurse practitioner. (*Compare* Dkt. 3 at 31 *with id*. at 99). Plaintiff refers to her as an LMSW (*see* Dkt. 4-1 at 1), and so the Court has used this title.

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the Commissioner's regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the Commissioner's regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). The ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

In this case, LMSW King issued an opinion on August 20, 2021, in which she opined that Plaintiff—among other things—would be off task for more than 30% of the workday

and would be incapable of maintaining regular attendance and being punctual within customary tolerances. (Dkt. 3 at 780). LMSW King also confusingly marked boxes indicating both that Plaintiff would not be at all precluded from making simple work-related decisions and that he would be completely precluded from making simple work-related decisions. (*Id*.). She opined that Plaintiff would be unable to maintain attention for two-hour segments for more than 20% of an eight-hour workday, and that he would be unable to work in coordination with or proximity to others without being unduly distracted for more than 20% of an eight-hour workday. (*Id*.).

In assessing Plaintiff's RFC, the ALJ considered LMSW King's opinion and concluded that it was not persuasive. (*Id*. at 31). The ALJ explained that the "vegetative symptoms endorsed" by LMSW King were "not consistent with the longitudinal treatment record." (*Id*.). The ALJ gave examples of the inconsistences. While LMSW King reported that Plaintiff had "sleep disturbance," "decreased need for sleep," and "appetite disturbance with weight change" (*id*. at 779), the ALJ noted that Plaintiff "consistently endorsed normal sleep and appetite" (*id*. at 31; *see, e.g., id*. at 512 (treatment records showing no report of poor appetite or overeating, and no insomnia or hypersomnia), 522 (treatment records showing appetite and sleep as "normal"), 527 (treatment records showing no report of sleep disturbance)).

The ALJ further explained that LMSW King's opinion was not consistent with Plaintiff's documented improvement while engaged in treatment. (*Id*. at 31). The ALJ explained that Plaintiff "and his wife reported substantial improvement of his symptoms and this is documented in the progress notes." (*Id*.; *see, e.g., id*. at 869 (progress note from

LMSW King dated 9/1/2021 reporting that Plaintiff's anxiety and depression are a 2/10, with 10 being the highest, that Plaintiff reports his mood as good, and that Plaintiff "identifies that as long as he stays on his medications that lifes [sic] stressors are manageable at this time")).   The ALJ noted that Plaintiff "was responsible for childcare and homeschool/distance learning."  (*Id*. at 31).

The ALJ also explained that LMSW King's opinion was not supported by Plaintiff's mental status examinations, which did not "document all of the signs and symptoms endorsed at page 3" of the opinion.  (*Id*. at 31).  He specifically noted that Plaintiff "did not present with flight of ideas, paranoia, psychomotor agitation or retardation, impairment in impulse control, hyperactivity, or memory impairment" (*id*.), despite LMSW King having claimed that Plaintiff showed all those symptoms (*see id*. at 779).  Finally, the ALJ observed that "[p]rogress notes indicate that the [opinion] form was completed collaboratively."  (*Id*. at 31; *see id*. at 864 (progress note indicating that LMSW and Plaintiff "completed SSD paperwork collaboratively")).

Plaintiff argues that the ALJ did not comply with the Commissioner's regulations in assessing LMSW King's opinion.  Plaintiff first contends that it was an exaggeration for the ALJ to say that LMSW King opined that Plaintiff had "vegetative symptoms."  (Dkt. 4-1 at 11-12).  But Plaintiff's disagreement with the ALJ's choice of adjective—even if that adjective may have been somewhat hyperbolic—is not a basis for the Court to conclude that the ALJ misapplied the regulations.

Plaintiff then argues that the ALJ asserted that LMSW King's "opinion was not persuasive because it was not consistent with the longitudinal record without any actual

citations to the record to support such a claim was clear error." (*Id*. at 12).  But the ALJ identified the specific parts of the longitudinal record that he concluded were inconsistent with LMSW King's opinion.  (Dkt. 3 at 31).  And earlier in his decision, he cited the specific records supporting his conclusions.  (*See, e.g., id*. at 29 (citing specific records showing that "[w]hen reengaged in treatment," Plaintiff's "[a]ctivity level, sleep, and appetite were reportedly normal" and specific records showing that Plaintiff " reported that his marriage was doing well," that Plaintiff's wife "felt he was doing better," and that Plaintiff was continuing to do well and had reached his goals in counseling)).  While the ALJ did not provide pincites within the medical records, that alone does not require remand, and Plaintiff has cited no regulations or controlling authority to suggest that it does.

Contrary to Plaintiff's argument, this is not a case in which the ALJ merely asserted that an opinion was not consistent with the overall medical evidence, without providing any supporting detail.  (*See* Dkt. 4-1 at 13).  The ALJ explained why he did not find LMSW King's opinion persuasive, and provided specific detail regarding the consistency and supportability factors.  The Court finds that the ALJ complied with the applicable regulations.

The ALJ's conclusions are also supported by substantial evidence.  While Plaintiff has identified evidence that he contends is consistent with LMSW King's opinion (*see id*. at 13-14), "whether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see also*

*McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citation omitted)). The ALJ based his conclusion on the treatment records and progress notes, including the mental status examinations, which suffices to meet the substantial evidence standard.

Plaintiff asserts without any citation to the record that "[w]hile Plaintiff did experience some improvement with treatment, he did have times where his symptoms worsened." (Dkt. 4-1 at 13). This undeveloped argument does not provide a basis for reversing the Commissioner's determination. As the Commissioner points out in response, there are many medical records in this case wherein Plaintiff reported stability in his mood and functioning. (Dkt. 6-1 at 14). The ALJ recounted these medical records in his decision. (*See* Dkt. 3 at 29). Plaintiff has not shown that the ALJ improperly ignored cycles of improving and worsening mental health symptoms in this case.

The Court is further not persuaded by Plaintiff's argument that the ALJ failed to appropriately distinguish between being a parent and caring for one's children and performing substantial gainful employment in the competitive workplace. (Dkt. 4-1 at 14). The ALJ did not find that Plaintiff's ability to provide childcare and homeschool his children meant he was capable of substantial gainful employment in a competitive workplace. The ALJ found that those activities were not consistent with the very significant limitations identified by LMSW King. That was a reasonable conclusion. *See*, *e.g.*, *Christina J. v. Comm'r of Soc. Sec.*, 695 F. Supp. 3d 357, 368 (W.D.N.Y. 2023)

(upholding ALJ's conclusion that counselor's opinion was "in sharp contrast to the claimant's ability to provide full-time childcare to her two children seven days a week").

Finally, the Court does not find that the ALJ erred by noting that LMSW King authored her opinion "collaboratively" with Plaintiff. While an ALJ should not discount a medical source's opinion simply because it is based on a claimant's subjective complaints, an ALJ is entitled to consider whether a report reflects a medical source's own opinion, or is merely "a doctor's recording of [the claimant's] own reports[.]" *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014). And in this case, where LMSW King's opinion was inconsistent with her own progress notes and reported symptoms that were not found in her own treatment records, the Court does not find it inappropriate for the ALJ to consider what influence Plaintiff's "collaboration" had on the final product. For all these reasons, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   January 6, 2025
         Rochester, New York